## Nashville, Chattanooga & St. Louis Railway Company v. Grayson County National Bank.

### No. 1551.  Decided May 9, 1906.

**1.—Supreme Court—Jurisdiction.**

The statute providing that no writ of error shall lie to the judgment of the Court of Civil Appeals in any civil case when a County Court would have had original jurisdiction to try it (Rev. Stat., art. 996) means the case made by the original petition, and not the case as actually tried.  (P. 19.)

**2.—Same—Case Stated.**

Plaintiff sued in the District Court for damages aggregating $1641.45; but by amendment, alleging settlement f some of the items of damages claimed, he reduced the amount sued for to $877.79, for which he might have sued in the County Court. The judgment of the Court of Civil Appeals affirming plaintiff's recovery on appeal by defendant was not final; the Supreme Court had jurisdiction on writ of error.  (P. 19.)

**3.—Bill of Lading—Consignee.**

A bill of lading left unfilled the blanks in the body of the instrument for inserting the name of the consignee and destination, but in the margin, under the head, "Marks and numbers," gave the town to which it was destined, and the name of a firm there. The instrument contained notice that freight must be "plainly marked with the name of the consignee and destination," and described the shipment as "marked and numbered as per margin." Held, that it must be construed as a bill of lading calling for delivery to the consignee named in the margin, and not to shipper's order.  (Pp. 19–21.)

**4.—Carrier—Delivery—Production of Bill of Lading.**

Though the carrier be held entitled to require production of the bill of lading before delivery to the consignee named, he can not be held, in the absence of notice of its assignment by the shipper or of a stipulation in the contract against delivery without its production, to have assumed any risk by delivery to the consignee except that such delivery is authorized by the bill. His delivery to the consignee named was a compliance with his contract though the shipper, without his knowledge, had assigned the bill of lading to secure a draft on the consignee, and the latter refused payment.  (Pp. 21, 22.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Grayson County.

The Grayson County Bank brought suit and had recovery against the railway company and the judgment was affirmed on appeal by defendant, who thereupon obtained writ of error from the Supreme Court.

C. H. Smith and J. A. Templeton, for plaintiff in error.—There was nothing in the bill to indicate that the shipment was made to the shipper's order, or that the shipper had reserved the title to or control over the grain shipped thereunder, and under such billing appellant was warranted in delivering the wheat to the consignee therein named without requiring the production of the bill of lading.    Craig v. Marx & Kempner, 65 Texas, 654; Benjamin on Sales, 399; East Line & R. R. Ry. Co. v. Hall, 64 Texas, 620; Lawrence v. Minturn, 17 How., 100; Hutchinson on Cariers, sec. 730; Wabash Ry. Co. v. Jaggerman, 4 N. E. Rep., 641; Wolfert v. Pittsburg, etc., Ry. Co., 44 Mo. App., 330; 4 Elliott on Railways, sec. 1424; Gulf, C. & S. F. Ry. Co. v. Dwyer, 75 Texas, 572, s. c., 84 Texas, 199.

E. B. Perkins and Head, Dillard & Head, for St. Louis S. W. Ry. Co.—The delivering carrier must await the production of the bill of lading before making the delivery.    If he fails so to do he takes the risk upon himself.    This case on former appeal, 79 S. W. Rep., 1094; Furman v. Union Pac. Ry. Co., 106 N. Y., 579; First Nat. Bank of Pullman v. Northern Pac. Ry. Co., 68 Pac., 965; Wichita Savings Bank v. Atchison, T. & S. F. Ry. Co., 20 Kan., 519; Ratzer v. Burlington, C. R. & N. Ry. Co., 66 N. W., 988; Union Pac. Ry. Co. v. Johnson, 50 Am. St. Rep., 540.

A. L. Beaty, for defendant in error, Grayson County National Bank. On motion to dismiss.    1 Enc. Pl. & Pr., 710; Wood County v. Cate, 75 Texas, 215; McDannell v. Cherry, 64 Texas, 177; Miller v. Newbauer, 61 S. W. Rep., 974.

In making delivery of this wheat to the Southern Flour and Grain Company, plaintiff in error delivered the bank's property, and, not having demanded the production of the bill of lading, which, if produced, would have disclosed the facts, there was a misdelivery and it is liable. 5 Am. & Eng. Enc. Law, 200, 209; 6 Am. & Eng. Enc. Law, 629; First Nat. Bank v. Northern Pac. Ry. Co. (Wash.), 68 Pac., 965; Garden Grove Bank v. Humeston & S. Ry. Co. (Ia.), 25 N. W., 761; Johnson v. Union Pac. Ry. Co. (Neb.), 63 N. W., 144; Gates v. Chicago, B. & Q. Ry. Co. (Neb.), 60 N. W., 583; Weyand v. Atchison, T. & S. F. Ry. Co. (Ia.), 39 N. W., 899; Louisville & N. Ry. Co. v. Barkhouse (Ala.), 13 So., 534; Furman v. Union Pac. Ry. Co., 106 N. Y., 579; Libby v. Ingalls, 124 Mass., 503.

GAINES, CHIEF JUSTICE.—This suit was originally brought by the Grayson County National Bank against the Nashville, Chattanooga & St. Louis Railway Company, the Houston & Texas Central Railway Company, the St. Louis & Southwestern Railway Company and the St. Louis & Southwestern Railway Company of Texas to recover damages for the delivery to a company not entitled to receive them of three car loads

of wheat upon which the plaintiff claimed liens for sums aggregating $1,641.45. Subsequently the plaintiff filed an amended original peti-- tion against all the defendants except the Houston & Texas Central Railway Company in which it alleged, that the claims for two of the car loads of wheat had been settled; and in which he sought to recover but for one. The value of this car load was alleged to be $377.79 and the prayer was for a recovery of $500.00 as damages. Upon the trial the plaintiff obtained a judgment against the Nashville, Chattanooga & St. Louis Railway Company alone. The defendant having prayed judgment against its codefendants in case judgment was rendered against it, it was denied a recovery against them. On appeal to the Court of Civil Appeals the judgment was by that court in all respects affirmed.

The appellant having applied to this court for a writ of error to the judgment in favor of the plaintiff bank, its application was granted. The defendant in error, the Grayson County National Bank, now moves to dismiss the writ of error for want of jurisdiction. We are of opinion that the motion should be overruled. The suit as made by the original petition being for more than $1,600 the District Court alone has juris- diction to try it. Where a plaintiff sues for an amount sufficient to give that court jurisdiction, the court may proceed to judgment although the amount he is entitled to recover be found to be less than $500. In the absence of a plea to the jurisdiction, averring that the sum claimed is fraudulently alleged for the purpose of giving jurisdiction to the court, the amount claimed as shown by the petition is "the amount in con- troversy" and fixes the jurisdiction. Where the court acquires juris- diction by the original petition, it retains it to the end of the suit. After mature deliberation, this principle was announced and acted upon in the case of Ablowich v. The Bank (95 Texas, 429), and several de- cisions of this court to the contrary were expressly overruled.

But it is ingeniously argued, on behalf of the motion to dismiss, that although the District Court had jurisdiction to proceed to judgment, the decision of the Court of Civil Appeals is final. Article 996 of the Revised Statutes provides, in effect, that no writ of error shall lie to the judgment of the Court of Civil Appeals in "any civil case appealed from a County Court or from a District Court when under the Constitution a County Court would have had original or appellate jurisdiction to try it," etc. For the reason, that the County Court would have had juris- diction to try a case for the amount claimed in the amended petition in this case, it is insisted, that it is excepted out of the class of cases sub- ject to review by the Supreme Court; but we think the case meant in the language quoted is that made by the original petition and not the case as actually tried.

The carload of wheat for the value of which a recovery is sought in this case was delivered at Tom Bean, Texas, to the St. Louis South- western Railway Company of Texas by the Sherman Grain Company, to be transported to Adairsville, Georgia; and was in fact carried by the initial carrier and the St. Louis Southwestern Railway Company to Memphis, Tennessee, where it was transferred to the defendant the Nashville, Chattanooga & St. Louis Railway Company, and was by that

company transported to the point of destination. It was there delivered to the Southern Flour and Grain Company. The bill of lading was assigned by the consignor to the defendant in error, the Grayson County National Bank. The latter drew on the Southern Flour and Grain Company for the price of the wheat, attached the drafts to the bill of lading and sent them for collection to Adairsville, Georgia. Payment of the draft was refused by the drawee.

The first question presented is as to the construction of the bill of lading. Was it a bill for delivery to a named consignee, or did it merely authorize a delivery to the consignor or to his order? We set out so much of the bill of lading as is material to a determination of this question:

"St. Louis Southwestern Railway Company of Texas.

### BILL OF LADING.

No......

*Tom Bean, Texas,* 12-21-00.

Rates Guaranteed.

From ...................

To .....................

Route.

Via ....................

Via ....................

Charges Advanced $.....

If 1st class....per 100 lbs.
If 2d class....per 100 lbs.
If 3d class....per 100 lbs.
If 4th class...per 100 lbs.
If 5th class...per 100 lbs.
If Class A....per 100 lbs.
If Class B....per 100 lbs.
If Class C....per 100 lbs.
If Class D 32..per 100 lbs.
If Class E....per 100 lbs.
.............per 100 lbs.
Cotton .......per 100 lbs.
Cotton in dollars per bale.

Received from *Sherman Grain Company,* the following packages (contents and value unknown) in apparent good order, marked and numbered as per margin, to be transported to..........and there delivered in like order to.........his or their assigns, he or they paying freight and charges as per margin.

Notice. Each package of freight must be plainly marked with the name of consignee and destination, except shipment in carload lots, to one consignee; and Cotton which is provided for by rules governing same. This bill of lading must be presented without alteration or erasures and surrendered, if demanded, upon delivery of articles mentioned herein.

In Witness Whereof, the agent of the St. Louis Southwestern Railway Company of Texas has signed.......bills of lading, all of this tenor and date, one of which being accomplished, the others to stand void.

Marks and Numbers.

*SW*
6746
*Southern Flour & Grain Co.*
*Adairsville, Ga.*
*Care N. C. & St. L. R. R.*
*Memphis, Tenn.*

(Stamp cancelled)

List of Articles.

*Bulk Wheat.*

No. 34711

*G. M. Hurd.*"

(All the words in the bill are printed except those underscored [in italics], which are written in pencil.)

The difficulty of construction grows out of the fact, that the blanks in the body of the bill, which were left for the name of the place of destination and for that of the consignee have not been filed. It is to be presumed that the failure to fill the blanks was intentional. Such being the case, it is proper to look elsewhere upon the face of the bill in order to ascertain why the names were not inserted in the blanks left for that purpose. If the name of the consignee and the place of delivery clearly appeared elsewhere upon the face of the paper, then we could see a satisfactory reason why the blanks were not filled. The "notice" found in the body of the writing, to the effect, that each package should be marked with the name of the consignee and the destination, shows a requirement for marking separate packages (when not in carload lots) and the printed form having in its margin a place for the insertion of the marks upon the goods indicates that it was the custom and course of business to insert such marks in that place. Since the bill itself directed that the packages should be marked with the name of the consignee and the destination, the marks as shown in the margin necessarily point out the consignee. Under the printed words "Marks and Numbers" are written in the margin of this bill of lading, the name of a company and the name of a place, in the customary form of marking a package for transportation. While the "notice" above referred to does not require a carload lot to one consignee to be marked; the insertion of the name "Southern Flour and Grain Co." and of the place, "Adairsville, Georgia," show with none the less certainty that the former was the consignee and the latter the place of destination of the shipment. The inference is that the car was in fact marked, although the rule did not require this to be done. Without these notations in the margin and the "notice" in the body of the instrument above referred to, there would probably be such doubt about the construction of the bill of lading, that we would be compelled to resolve it in favor of the assignee of the shipper. But we think they leave no doubt that under the contract as shown by the bill of lading the goods were distinctly consigned to the "Southern Flour and Grain Co."

But it is stoutly maintained, on behalf of the defendant in error, that even if the bill of lading is to be construed as not a consignment to the shipper's order, yet the carrier is liable as for a delivery to the wrong party. In the case of Dwyer v. Gulf C. & S. F. Company (69 Texas, 707), it is said that the carrier is entitled to demand the bill of lading before delivering to the consignee. Whether this remark was called for by the decision of that case and whether it be correct, we need not determine. We think he would clearly have this right provided he had any good reason to doubt the consignee's right to receive the goods. It is therefore plausible to say, that the defendant company should have demanded the bill in this case and that if it had done so, it would have seen that the bill had been assigned, which would at least have lead to an inquiry which if diligently prosecuted would have disclosed the fact that the goods were not to be delivered to the consignee until the purchase price had been paid. But while it has been held

that if the parties to a bill of lading stipulate that the goods shall not be delivered without its production, the carrier is not excused for a delivery to the consignee when the bill was not presented; yet we understand the law to be that in the absence of such a stipulation, the carrier may deliver without requiring its production. We have found an expression in the opinions of some of the courts to the effect, that if a delivery be made in the absence of the bill of lading, the carrier takes the risk of the bill being such as authorizes a delivery to the person to whom he may deliver. It is laid down as elementary law, that the consignee is presumably the owner of the goods. He is entitled to demand a delivery of them subject only to the right of stoppage in transitu, and therefore the carrier may safely deliver to him, provided always the latter has no notice of a limitation upon the right in favor of an adverse claimant. In an article in the Cyclopedia of Law and Procedure, prepared by an eminent jurist, the law in reference to this matter is thus stated: "Where the carrier receives the goods under a contract, either express, or implied from the marks on the goods, to deliver them to a person named, without any reservation of power of disposal by the consignor, then the delivery to such person completes the contract and relieves the carrier from further liability. This rests on the assumption which the carrier is authorized to entertain that the title to the goods passes to the consignee on delivery to the carrier. But if the carrier has notice that the consignee is not the owner, nor entitled to receive the goods, delivery to him will constitute conversion." (6 Cyc., 468.) The proposition is well sustained by numerous decisions of the courts, some of which are cited in the notes. Southern Express Co. v. Williams, 99 Ga. 482; Nebraska Meal Mills v. St. Louis S. W. Railway Co., 64 Ark., 169; Marshall v. New York Cent. Railroad Co., 45 Barb., 502; Scammon v. Wells Fargo Co., 84 Cal., 311; Boston & M. R. R. Co. v. Warrior M. Co., 76 Me., 260; Sweet v. Barney, 23 N. Y., 335; Pennsylvania Co. v. Holderman, 69 Ind., 18; Foy v. Chicago, M. &. St. P. R. R. Co. (Minn.), 65 N. W., 627; Gates v. Chicago, B. & Q. Railway Co., 60 N. W., 584; Weisman v. Philadelphia, W. & B. Railroad Co., 22 R. I., 128; Dobbin v. Michigan Cent. Railroad Co., 56 Mich., 522.)

We are of opinion that under the undisputed evidence in this case, the plaintiff in error was not liable for the delivery of the wheat, and therefore the judgment is reversed and here rendered in its favor.

*Reversed and rendered for plaintiff in error.*