CALDWELL NAT. BANK v. REEP et al.*
(No. 913.)

(Court of Civil Appeals of Texas. Amarillo. June 28, 1916. Rehearing Denied Oct. 4, 1916.)

1. ALTERATION OF INSTRUMENTS ⬤⟹6—NOTE— MATERIAL ALTERATION—STIPULATION.

    Where a note stipulated that the drawers, indorsers, sureties, etc., waived presentment for payment, protest, and notice of protest, notice of nonpayment, and agreed that the time of payment might be extended without notice to them, or without their consent, and without affecting their liability, and the bank which held the note, innocently and pursuant to an agreement with a signatory thereto, canceled the due date and inserted a later date, the alteration destroyed the note as an obligation, despite the stipulation, which meant that those secondarily liable waived the matters mentioned, and that, if the note was extended as to the principal, the liability of the secondary parties would not be affected.

    [Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 30–33; Dec. Dig. ⬤⟹6.]

2. ALTERATION OF INSTRUMENTS ⬤⟹23—NOTE —RECOVERY ON ORIGINAL CONSIDERATION.

    While a material, though innocent, alteration of a note, destroys it as an obligation, and as a premise for recovery, under appropriate conditions recovery may be had on the original consideration.

    [Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 192–207; Dec. Dig. ⬤⟹23.]

3. BILLS AND NOTES ⬤⟹540—ACTION—PLEADING—JUDGMENT ON RENEWED NOTE.

    In a bank's action on a note, where the original petition, after setting out in usual form the execution and delivery of the note, and after alleging delivery of collateral as security, averred that to secure a note for another amount, which was renewed by the execution of the note in suit, a defendant made to a trustee his deed of trust to secure the payment of the other note, the lien existing for its amount and interest being incorporated in the note in suit, the matter describing the other note was incorporated in the petition merely as matter of description and inducement, and the trial court properly refused to render judgment on the other note.

    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1918–1934; Dec. Dig. ⬤⟹ 540.]

4. BILLS AND NOTES ⬤⟹540—ACTION—PLEADING—JUDGMENT ON RENEWED NOTES.

    In a bank's action on a note, where the first paragraph of the supplemental petition simply reiterated that two original notes were merged into that in suit, declaring that all the notes contained a stipulation as to an agreement for an extension of time, the second paragraph averred that the bank was the owner and holder of all the notes, and had acquired them for valuable consideration, etc., there being no liability on the note in suit, the court properly refused to render judgment on the original notes; the supplemental petition evidencing no intention of recovery or desire for judgment on them.

    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1918–1934; Dec. Dig. ⬤⟹ 540.]

5. BILLS AND NOTES ⬤⟹540—ACTION—PLEADING—DECLARATION FOR JUDGMENT.

    In a bank's suit on a note given to renew two others, where plaintiff averred in the second paragraph of its supplemental petition that it was the owner and holder of all the notes, without any notice of an agreement between defendants, the defense having been pleaded, by a defendant, of an agreement with his codefendant, there was no declaration of liability upon the original notes for judgment.

    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1918–1934; Dec. Dig. ⬤⟹ 540.]

Appeal from District Court, Fisher County; John B. Thomas, Judge.

Action by the Caldwell National Bank against M. D. Reep and others. From a judgment for the named defendant, plaintiff appeals. Judgment affirmed.

A. H. Kirby, of Ft. Worth, L. H. McCrea, of Roby, and Theodore Mack, of Ft. Worth, for appellant. John W. Woods, of Rotan, and Harry Tom King, of Abilene, for appellees.

HENDRICKS, J. September 4, 1911, M. D. Reep, the appellee herein, executed two notes, dated September 4, 1911, each matur-

ing six months from date, in favor of the Cowboy State Bank & Trust Company; one of said notes being for the principal sum of $1,297.44, and the other for the sum of $1,272. The note for $1,297.44 was secured by a deed of trust on section No. 138, in block No. 2, Houston & Texas Central Railroad Company survey, save and except a 200-acre homestead in the southwest corner of said section, said land situated in Scurry county. Before the maturity of these notes the Caldwell National Bank, the appellant herein, became the legal owner and holder of the same, by transfer and delivery. On February 3, 1912, M. D. Reep executed a note for $2,697.91, on its face payable to the order of the Cowboy State Bank & Trust Company, and due, according to the recitation in the note, on March 3, 1912. This note was signed by one Sim Lewis, who bore the attitude to Reep of a principal upon said note, on account of some contract entered into between Lewis and Reep, and Reep's obligation to Lewis on the note was that of surety. This note, though formally made to the Cowboy State Bank & Trust Company, as payee, was in reality executed for the benefit of the Caldwell National Bank, for the purpose of merging and extending the time of the indebtedness evidenced by the two first notes mentioned. The Cowboy State Bank & Trust Company immediately forwarded this note to the Caldwell National Bank, the appellant herein, and upon which, in so far as the obligation of Reep is concerned, he still bore to said bank the attitude of a principal, as upon the two first notes, with the contractual relation of Lewis as that of surety to that bank.

[1] The Caldwell National Bank sued Lewis and Reep on this note for $2,697.91, and judgment by default was rendered against Lewis. Reep, among other things, pleaded a material alteration of the particular note, and at the trial it was established that said alteration was evidenced by the following facts: This note, as stated on its face, had a due date of March 3, 1912. At or before its maturity, Lewis entered into an agreement with the officers of the Caldwell National Bank that, in consideration of placing additional security by him as collateral to said note, and the payment of interest on the same to October 3, 1912, said note would be extended to the latter date. It was also a part of this agreement that Lewis was to pay the interest on June 18th on the note for the extension. He delivered the security as per agreement, and the bank drew on him, in compliance with the agreement as to the date, June 18th, the interest was to be paid, and said draft was promptly paid, which consummated the contract of extension to October 3d. One of the officers of the bank, conducting the particular transaction, made a mark of cancellation through the date "March 3d," and inserted just above the alteration "June 18," making the note read,

according to the alteration, June 18, 1912, as the due date of the same. This note, following the obligation to pay principal, interest, and attorney's fees, contains this stipulation:

"The drawers, indorsers, sureties, and guarantors severally waive presentment for payment, protest and notice of protest, notice of nonpayment, and agree that the time of payment may be extended without notice to them, or without their consent, and without affecting their liability."

The argument is made: That, upon this stipulation, when the bank substituted June 18, 1912, as the time of the payment of said note, upon the agreement with Lewis for the extension, the legal effect of the instrument was not changed; hence the alteration was immaterial. That, when it was agreed with Lewis that for a consideration the note should be extended, the change of the date in the face of the note is no more than writing on the back of the same an extension of the time of payment.

It was attempted to be shown that, on account of a letter written by Reep to the Caldwell National Bank, at a time when the negotiations between the bank and Lewis were pending for the extension, Reep agreed to said extension. The record does not bear out this contention. Reep agreed to an extension of the note to some period of time in November—not to October 3, 1912.

We do not think the stipulation above quoted, in regard to the waiver of the presentment for payment, protest, and notice of nonpayment, and extension of time without affecting liability, would affect the particular question. Evidently the stipulation means that those who are secondarily liable on the note waived the matters mentioned as to presentment, protest, and notice of nonpayment, and that, if said note was extended as to the principal of same, the liability of said parties would not be affected. The word "drawers" is evidently not inserted to mean the makers, as principals, upon said note. The due date in the face of the note is a material portion of same, for many conceivable reasons unnecessary to mention. "* * * A change of such time [the due date] is obviously of the same nature as a change in the date—identical in principle and effect; and whether such change delays, accelerates, or preserves in legal effect, the time specified or implied for payment, it constitutes a material alteration." 2 Daniel on Neg. Insts. (6th Ed.) § 1377. The time of payment of this note as to Reep, the maker, was not extended when Lewis put up additional collateral and anticipated the interest by payment. Hence the due date as to him remains the same; the extension only to Lewis, whom the trial court found bore the attitude of surety to the bank. Even if Lewis had the right, under the stipulation quoted, to extend the time of payment as to Reep, the principal, we seriously question that the alteration should be considered an

immaterial one, notwithstanding in a sense it might be urged that, when the agreement for extension was made, the due date in the face of the note in law became immaterial. Whether extended or not, however, the first due date in a note may, as to many matters, under some conditions, become quite material. The preservation of the identity of the instrument, and preventing the substitution of another instrument, without the privity of the party concerned, is also a reason actuating the law in declaring the note void. Greenleaf on Evidence, § 565. To destroy the due date in a note, and make an extension speak such date, and disguise it as an extension, destroys the paper as to its successive changes and different contracts.

We think it is inferable, and the trial court had the right to find, that the alteration made by the officer of the bank was not made willfully, but for the purpose of conforming to what he conceived to be the agreement with Lewis for the extension. The contention of the officer of the bank, who testified at the trial, was that Lewis was unable to pay the interest when the note matured March 3, 1912, but in consideration of the extension promised to pay it January 18th, and, if the money were not paid January 18th, the extension to October 3, 1912, would not have been granted; in other words, his testimony is susceptible of the construction that the payment of the interest June 18th was a precedent condition to the extension, hence he changed the maturity date of the note in conformity with what he conceived to be an agreement for a first extension. However, as stated, we think the due date is material.

[2] The innocent intention of the bank in materially altering the note, though destroying it as an obligation, and as a premise for recovery, under appropriate conditions, however, the party could recover upon the original consideration. Otto v. Halff, 89 Tex. 384, 34 S. W. 910, 59 Am. St. Rep. 56.

[3] It is assigned that the trial court should have rendered judgment on the original notes first mentioned, the one for the principal sum of $1,297.44, and the other for $1,272, executed by Reep and merged into the $2,600 note signed by Reep and Lewis, which was altered by the bank. The original petition of the Caldwell National Bank, after setting out in the usual form the execution and delivery of the note for $2,697.91, payable to the Cowboy State Bank & Trust Company, and after alleging the delivery of certain collateral, as security for the payment of said note, averred:

"That to secure a note for $1,297.44, dated September 4, 1911, due on or before six months after date, with interest at the rate of 10 per cent. per annum, executed by M. D. Reep, payable to the order of the Cowboy State Bank & Trust Company, which said note of $1,297.44 was renewed by the execution of said note for $2,697.91, said defendant M. D. Reep made, executed, and delivered to John W. Woods, as trustee, his certain deed of trust * * * by the execution and delivery of which a deed of trust was given on said land, to secure the payment of said note for $1,297.44, and said lien existing for said amount and interest is incorporated in said note for $2,697.91."

It is quite evident that the pleader, in describing the note for $1,297.44, does so as a matter of description and inducement, for the purpose of showing that it was secured by the deed of trust upon the real estate, and that the same was merged into the larger note ($2,697.91) actually sued upon. There is no averment in the original petition upon any obligatory feature in the note for the purpose of evidencing an intention of recovery, or of a desire for judgment; said allegation presenting evidentiary facts in order to show that such note, with its security, had been extended into the larger one, and afforded a basis for a recovery upon the mortgage, with a foreclosure of same to that extent upon said larger note.

[4] The supplemental petition does not assist the pleader. For the purpose of ascertaining its meaning, we note that Reep, the defendant, had answered in the fifth paragraph that the extension of the $2,600 note, without his consent, had released him, and, further, the execution of said note was in satisfaction of the two previous notes. The further idea is carried into the eighth paragraph of his answer, in pleading that he was released from the larger note when the same was executed, for the reason that, when delivered to the Cowboy Bank, said bank, as the agent of the Caldwell Bank, understood that as between him and Lewis he was released from the former notes, and said Cowboy Bank knew of the changed relationship he bore to the original indebtedness, as a principal to that of surety, on account of his contract with Lewis, and that said extension also released him from the note sued upon. The first paragraph of the supplemental petition is simply a reiteration that the two smaller notes were merged into the larger note, with the further declaration that all of the notes contained the stipulation (hereinbefore quoted) as to the agreement for extension; the second paragraph averring that it was the owner and holder of all the notes, and had acquired the same for a valuable consideration, without notice of any agreement between Lewis and Reep. The agency of the Cowboy Bank is denied in the supplemental petition, and the trial court found that said bank was the agent of Reep and Lewis only.

[5] When the plaintiff averred, in the second paragraph in the supplemental petition, that he was the owner and holder of all the notes, without any notice of the agreement between Reep and Lewis—meaning the agreement pleaded by the defendant Reep as to his contractual status with Lewis—clearly it is not a declaration of liability upon the notes for judgment. It is a reply to the defense pleaded by Reep, which is accentuat-

ed by thereafter denying in the replication the alleged agency by the Cowboy Bank of Reep. ,

We think the whole of plaintiff's supplemental petition is one of challenge, in reality, to the averments in the answer, without evincing an issue presented to the trial court on the two smaller notes for judgment. The pleading is not alternative in its nature; that is, if denied relief on account of the material alteration of the $2,600 note, plaintiff solicits a judgment on the original consideration, evidenced by the smaller notes. In the original petition it is clear that the mortgage, alleged as having been given as security for the $1,297 note, is not presented for the purpose of foreclosure upon the establishment of that pleading as a debt in judgment; merely a pleading, as stated, exhibiting that said $1,297 note is merged, as a part of the consideration, into the larger note, to show that said security is extended as collateral to said larger note. The supplemental petition does not pretend to present for judgment the foreclosure of the mortgage in satisfaction of any debt; hence, if the original petition does not present the deed of trust for the purpose of foreclosing it as security to the $1,297 note, the failure to present the mortgage and ask for a foreclosure in the supplemental petition evidences an intention not to recover in an action of debt on any part of the original consideration in the supplemental petition.

One of the smaller notes is not even mentioned in the original petition; in the supplemental petition the amount of same, except by calculation, is not averred; neither is the rate of interest mentioned. The closing paragraph of the supplemental petition asserts that "said notes" have been placed in the hands of an attorney for collection, "and the fees therein stipulated the plaintiff has agreed to pay their attorneys * * * in representing them in this cause." It is not averred in any pleading that the fees stipulated in the smaller notes would accrue to anybody for any purpose, or upon what condition said fees could be earned by any person.

We think the trial court was correct, upon the condition of the pleadings, in not rendering judgment upon the original consideration, and his judgment is in all things affirmed.